mitted himself to the jurisdiction of the court he should be compelled to come within the state. The view that I have taken does not prevent the defendants from obtaining an examination of the plaintiff. They can obtain such an examination under sections 887 et seq. of the Code of Civil Procedure. Section 887 provides that any party to the action may be examined on commission.

Motion to dismiss the orders granted, with $10 costs.

---

(121 App. Div. 507.)

HARBOR & SUBURBAN BLDG. & SAVINGS ASS'N v. WOOD et al.

(Supreme Court, Appellate Division, Second Department.   October 11, 1907.)

1. BUILDING AND LOAN ASSOCIATIONS—MORTGAGES—FORECLOSURE—DEFENSES.
   Where a building and loan mortgage was executed by both parties without fraud, and obligated the association to convey the premises to the mortgagors free of all incumbrances, including an underlying mortgage, on the mortgagors' payment of 144 installments of $25.70 each, and the association had fully complied with its contract up to the time suit was brought to foreclose the mortgage because of defendant's default, it was no defense that the association might not be able to complete its contract at the end of 144 payments.

2. SAME—CONTRACT—VALIDITY.
   A building and loan mortgage contract by which the association assumed an underlying mortgage, and agreed to convey the property to the mortgagors on their making 144 payments of $25.70 each, which included a premium on the loan, was valid.
   Rich, J., dissenting.

Appeal from Special Term, Kings County.

Action by the Harbor & Suburban Building & Savings Association against George T. Wood and others. From a judgment in favor of defendants on a decision of the court at Special Term, plaintiff appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, GAYNOR, and RICH, JJ.

Alexander S. Bacon, for appellant.
Samuel Leavitt, for respondents Wood.

WOODWARD, J.   This action was brought to foreclose a building and loan gross premium mortgage, drawn in the usual form. The defendant Wood and his wife sold the premises to a man named Mittnacht, the latter acting through one Rebecca Fitzgerald, and no payments were made after the sale to Mittnacht. By the terms of this mortgage, as understood by both the plaintiff and defendant, as shown by the pleadings and by the evidence upon the trial, the plaintiff was to convey the premises to the defendants Wood free and clear of all incumbrances, including an underlying mortgage for $1,800, upon the payment of 144 payments of $25.70 each. There is absolutely no dispute upon this proposition, and there is no question that the defendants were in default when this action was brought, but the learned court seemed to regard these matters of only incidental importance, and held that, because there was the possibility that the plaintiff might not be able to mature the building loan stock upon the payment of the 144

payments of $25.70 each, the defendants were in some manner over-reached, and gave a judgment in favor of the defendants.

We are unable to understand how this result could be reached consistently with the law. The defendants Wood, who alone contest the foreclosure, entered into the usual contract with the plaintiff for a building loan, to be repaid upon the installment plan. It was specifically agreed that the bond and mortgage should become void and of no effect on the completion of the payments which the defendants agreed to make, and the learned court has found that the plaintiffs fulfilled all of their part of the agreement up to the time of the commencement of the action, and the plaintiffs offered upon the trial to permit of the entry of a judgment in accordance with the language and the understanding of both parties. The learned court refused to find any of the alleged fraudulent matters charged against the plaintiff in the complaint, but, upon the proposition that the plaintiff might not be able to complete its contract at the end of 144 payments, the decree of the court refuses relief to the plaintiff. This issue was not raised by the defendants. All that they claimed was that the loan which they sought was only $2,570.50, and that 144 payments of $25.70 each would exceed this amount, and that as to this they had been deceived. They do not claim that they were not told plainly of the number of payments or of the amount of each, or that they were incapable of making the calculation, or that any advantage was taken of them in the suppression of these facts, but they claim that they did not become members of the association, and that they did not know that they were giving a premium upon the loan. But upon all of these matters the court has found against them, and properly, under the evidence, and it was the court which discovered and brought into this case the idea that the defendants were not bound by their agreement because of the possibility of the plaintiff not being able to carry out its contract.

A sufficient answer to this would seem to be that the plaintiff had performed all of its promises up to the time of the defendants' default, and there is no presumption that a corporation or an individual will not perform its lawful contracts. There is no evidence in this case that the plaintiff cannot perform its contract, nothing to show that it may not lawfully do so, and with the defendants in default, after a partial performance of the conditions of the contract, we are unable to understand why the plaintiff is not entitled to the relief demanded in the complaint. We take it that the plaintiff had a right to make the contract that was made. It is the same in its essential elements as hundreds of these building loan contracts which have never been challenged, and when both parties agree to their understanding of the contract, and when this understanding is in harmony with the language used, and this contract undertook to place the defendants in full ownership of the premises upon the payment of the stated number of installments, at $25.70 each, we know of no rule of law which permits the court to assume that the plaintiff might not be able to perform its part of the contract some years hence, and to refuse a remedy where the defendants are concededly in default. We think the court erred in this regard, and that the judgment should be reversed.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur, except RICH, J., who dissents.